UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| v. | § | |
| | § | Misc. Action No. 4:23-mc-1644 |
| JETALL COMPANIES, INC. AND | § | |
| MOHAMMED ALI CHOUDHRI, | § | |
| | § | |
| Respondents. | § | |
| | § | |

**PETITION OF THE UNITED STATES OF AMERICA**
**FOR ENFORCEMENT OF INVESTIGATIVE SUBPOENAS**

The United States of America files this petition to enforce two administrative subpoenas issued pursuant to the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1833a.  Specifically, the United States asks the Court to issue an Order compelling the Respondents to (1) produce the documents requested in the subpoenas, and (2) produce documents in the format requested in the subpoenas.

**I.    Introduction**

1.      This Petition is filed in the course of a civil investigation by the United States Department of Justice, Civil Division and the United States Attorney's Office for the Southern District of Texas (collectively, "DOJ") into potential violations by the Respondents of various statutes prohibiting financial fraud against or affecting certain banks and financial institutions under FIRREA.  *See* 12 U.S.C. § 1833a(c).

2.      On April 29, 2022, the United States served subpoenas on the Respondents, Jetall Companies, Inc. ("Jetall") and Mohammed Ali Choudhri ("Choudhri"), requesting testimony and

1

the production of documents (the "Subpoenas").  *See* Exhibits A and B.  Jetall and Choudhri have never objected to the Subpoenas.

3.     Since May 2022 the DOJ has communicated repeatedly with Respondents' counsel through telephone, email, and letters to secure the Respondents' compliance with their obligation to produce documents.[1]  Many of the communications sent by the DOJ went unanswered.  In those communications that were answered, Respondents' counsel confirmed that Respondents have responsive documents remaining in their possession.  Nevertheless, to date, Jetall has made only a limited and incomplete production of documents, and Choudhri has produced no documents at all.

4.     On June 20, 2023, after repeated attempts by the DOJ to resolve its concerns and in light of the Respondents' repeated failure to respond to the DOJ's inquiries, the DOJ informed the Respondents that the United States intended to file this Petition.  Following that communication, the United States engaged in three telephonic "meet and confer" sessions with one of Respondents' counsel, who again confirmed the Respondents have responsive documents they have not produced.  Jetall made one more partial production of documents on August 18, 2023, and on August 23, 2023, the DOJ asked Respondents' counsel when all of Respondents' remaining documents would be produced.  Respondents' counsel replied, "checking."  The DOJ has received nothing further.  As a result, judicial enforcement of the Subpoenas is required.

## II.     <u>Jurisdiction and Venue</u>

5.     The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1345, 12 U.S.C. § 1833a(g)(2), and 18 U.S.C. § 1968(g).

---

[1] Although the Subpoenas do request testimony, the United States' negotiations with Respondents' counsel to date—and the sole focus of this motion—center on the production of documents.

6.      Venue in this Court is proper pursuant to 12 U.S.C. § 1833a(g)(2) and 18 U.S.C. § 1968(g), because the Respondents reside, are found, and/or transact business in the Southern District of Texas.

### III.    The Parties

7.      Petitioner is the United States of America.  The United States has statutory authority to investigate and pursue violations enumerated under FIRREA.  12 U.S.C. § 1833a.

8.      Respondent Jetall Companies, Inc. is a Texas corporation with its principal place of business in Houston, Texas.  Jetall is a property management company that, according to its website, manages commercial office buildings in Houston and is involved in other commercial and residential real estate construction and financing.

9.      Respondent Mohammed Ali Choudhri is the Chief Executive Officer of Jetall and upon information and belief resides in Houston, Texas.

### IV.    Financial Institutions Reform, Recovery, and Enforcement Act

10.      Enacted in 1989, FIRREA provides the United States with civil enforcement authority over a variety of statutes prohibiting, among other things, false statements or false claims affecting federally insured financial institutions.  12 U.S.C. § 1833a.  In connection with its civil enforcement authority, FIRREA authorizes the Attorney General to issue subpoenas that "require the production of any books, papers, correspondence, memoranda or other records which the Attorney General deems relevant or material to the inquiry."  *Id*. § 1833a(g)(1)(C).[2]

---

[2] The authority to issue and enforce subpoenas under FIRREA was delegated by the Attorney General and the Assistant Attorney General for the Department of Justice, Civil Division to the "respective United States Attorneys for the various districts, and to the appropriate Directors of the Federal Programs Branch and the Commercial Litigation Branch of the Civil Division with responsibility for conducting civil penalty investigations and bringing civil penalty actions, any one of whom may individually exercise the authority in any given instance."  *See* Attorney General Memorandum, May 4, 1992; Civil Division Directive, May 5, 1992.  Exhibit C.

The subpoenas may both "require the attendance of witnesses" and require "the production of any such records from any place in the United States at any place in the United States designated by the Attorney General." *Id*.

11.     Enforcement of a FIRREA subpoena is pursuant to the "same procedures" as those provided in "subsections (g), (h), and (i) or section 1968 of Title 18." *Id*. § 1833a(g)(2). Under these provisions, the Attorney General may file an action to enforce a subpoena "in the district court of the United States for any judicial district in which such person resides, is found, or transacts business." 18 U.S.C. § 1968(g).

**V.     Background**

12.     The Respondents were served with the Subpoenas by certified mail on April 29, 2022. *See* Exhibits D and E.  Both Subpoenas demanded that the Respondents produce documents by May 23, 2022. *Id*.  On or about May 20, 2022, an attorney representing both Jetall and Choudhri (Dan Cogdell) contacted the DOJ to acknowledge receipt of the Subpoenas on behalf of the Respondents and begin a dialogue regarding the Respondents' production of documents.  The Respondents never objected to the service or substance of the Subpoenas.

13.     The cover letter accompanying each Subpoena explains that the United States is investigating false statements in connection with loans made to certain corporate entities defined as "Borrowers" in the Subpoenas.  *See* Exhibits A and B.  The Borrowers have connections to Jetall and/or Choudhri, and the United States' investigation seeks information relating to Jetall's and/or Choudhri's roles or interest in the loan transactions.

14.     The Subpoenas issued to Jetall and Choudhri are substantially identical, each containing 24 requests for the same categories of documents.  *Id*.

15.     Between May 2022 and August 2022, the DOJ participated in at least seven phone calls with the Respondents' counsel and exchanged multiple additional emails regarding the scope of the Subpoenas' document requests.  Throughout this time, the DOJ urged the Respondents to complete their production of documents as soon as possible.

A.     Respondents' Failure To Comply With The Subpoenas

16.     Respondent Jetall made three productions of documents between July and September 2022.  However, these productions were limited and consisted of incomplete responses to the Subpoena.

17.     To gain full compliance with both Subpoenas, the DOJ held a telephone call on September 27, 2022, with two additional attorneys representing the Respondents, Richard Roper and Jennifer MacGeorge.  Respondents' counsel informed the DOJ that Jetall's corporate email account had no automatic deletion, all corporate emails had been preserved, search terms were applied to identify potentially responsive documents, and that a team of contract attorneys had been retained to review the documents collected from both Jetall and Choudhri for production to the DOJ.  Respondents' counsel stated that there remained documents to be produced in response to the Subpoenas, and they expected to make a production shortly.

18.     After receiving no update following the September 27 call, counsel for the United States emailed Respondents' counsel on October 11 and 19, 2022, requesting an update on items discussed during the September 27 call and the promised document production.  Mr. Roper responded on October 20, and the DOJ held a call with Mr. Roper on October 21, during which Mr. Roper was unable to provide the status of the document production but offered to coordinate a call with Ms. MacGeorge.

19.     The DOJ continued to follow up with Respondents' counsel, and during a telephone call on October 31, Mr. Roper confirmed that the document review had been completed, the documents were being prepared for production, and Jetall and Choudhri would soon make their production of all remaining documents in response to both Subpoenas.

20.     On November 16, 2022, Jetall produced 514 documents.  The same day, the DOJ sent an email to Respondents' counsel, including Mr. Roper's colleague Javan Porter who was facilitating the document productions, asking for confirmation that the production consisted of all email communications that Jetall intended to produce.  Exhibit F (Email from Anthony Gill to Javan Porter, Nov. 16, 2022, at 6:05 PM).  The DOJ never received a response to the question posed in the November 16 email, even after sending follow up emails on November 18 and 22. *See id*. (Emails from Anthony Gill to Javan Porter, Nov. 18, 2022, at 10:36 AM and Nov. 22, 2022, at 2:39 PM).

21.     After review of the documents produced on November 16, the DOJ determined that, collectively, Jetall's four productions contained documents only partially responsive to nine of the 24 document requests set forth in the Subpoena.  As a result, the DOJ sent Respondents' counsel a letter dated December 15, 2022 ("December 15 Letter") that catalogued the deficiencies in the document productions and the various outstanding discovery issues with the Respondents. Exhibit G.

22.     The December 15 Letter requested that Jetall and Choudhri remedy the discovery deficiencies by January 6, 2023.

23.     On January 6, 2023, Respondents' counsel emailed the DOJ requesting a call and indicating that counsel was planning to send a letter and produce additional documents in response to the Subpoenas.  Exhibit H (Email from Richard Roper to Anthony Gill, Jan. 6, 2023,

4:01 PM).  Counsel for the United States was unavailable for a call but provided a link where Respondents' counsel could upload the letter and documents.  *Id.* (Emails from Anthony Gill to Richard Roper, Jan. 6, 2023, 4:13 PM, 5:12 PM, 8:40 PM).  No letter or documents were sent to the DOJ.

24.     After receiving no further update, the DOJ sent another letter to Jetall and Choudhri on January 18, 2023 ("January 18 Letter"), requesting a response to the December 15 Letter.  Exhibit I.  To date, Jetall and Choudhri have not responded to either letter.

B.     Jetall's Unusable Fifth Production Of Documents

25.     On January 30, 2023, Jetall made a fifth production of documents, which Jetall replaced with a corrected version of the same production on February 7, 2023 (the "February 7 Production").  The DOJ asked Respondents' counsel if the February 7 Production completed Jetall's and Choudhri's response to the Subpoenas, and counsel replied that it did not, noting "We are still going through documents and hope to make another production soon. Sorry for any inconvenience."  Exhibit J (Email from Anthony Gill to Javan Porter, Feb. 7, 2023, 3:37 PM; Email from Javan Porter to Anthony Gill, Feb. 9, 2023, 11:20 AM).  On February 14, February 24, and March 1, 2023, counsel for the United States continued to follow up with Respondents' counsel and asked when Jetall and Choudhri expected to complete their production of documents.  *See* Exhibit J.  The DOJ never received a response to these inquiries.

26.     After uploading the February 7 Production into a document review platform, the DOJ realized the production included only two documents.  The first is a single 7,354-page PDF file that appears to comprise numerous individual emails and documents but contains no metadata, document breaks, or any indication where individual documents begin or end.  The second document is a 1,067-page PDF file that likewise consists of various emails and other

documents with no metadata, document breaks, or any indication where individual documents begin or end.

27.     The two documents from the February 7 Production are unusable.  Even with a page-by-page review, the DOJ cannot be certain where one document begins and ends or which emails and attachments are related.  The February 7 Production also contains no metadata that would allow the DOJ to sort emails by sender, date sent, etc.  This unusable format is inconsistent with the Subpoenas' requirements, specifically Instruction No. 11 which requires all documents to be produced in accordance with the Civil Division's Specifications for Production of Electronically Stored Information and Digitized Images ("Production Specifications"), a copy of which accompanied the Subpoenas.  *See* Exhibit A at 4; Exhibit B at 4.

28.     Notably, the February 7 Production was made in a format different from Jetall's earlier productions that contain email.  The prior productions generally complied with the Production Specifications and consisted of Tagged Image File Format ("TIFF") images (with native files for Microsoft Excel files), document-level text files, and load files for metadata, which made it possible to search and sort the emails produced, as contemplated by the Production Specifications.  Respondents' counsel gave no reason why the February 7 Production was made in a different format and different from the prior productions.

29.     Because the February 7 Production was unusable and Respondents had failed to respond to any of the DOJ's requests in its December 15 Letter, the DOJ sent another letter to Respondents' counsel on March 14, 2023 ("March 14 Letter").  Exhibit K.  This letter cataloged Jetall's and Choudhri's failure to respond to the December 15 Letter and to respond to the DOJ's inquiries on February 14, February 24, and March 1 about the status of their document production efforts. It also emphasized that the February 7 Production had not been made in a

usable format.  The DOJ requested that Jetall and Choudhri respond to the outstanding requests and reproduce the February 7 Production in a usable format immediately.  As before, the DOJ received no response to this letter.

C.   The United States' Efforts To Meet And Confer With The Respondents Before Filing This Petition

30.    On June 20, 2023, the DOJ emailed counsel for Jetall and Choudhri informing them that the DOJ intended to file a petition to enforce compliance with the Subpoenas and requesting a meet and confer.  Exhibit Q.  Counsel for the United States held phone calls with Mr. Roper on June 27, July 10, and August 2, 2023, during which the United States' counsel informed counsel for the Respondents that the United States intended to file a petition and requested an update on whether the Respondents would produce any further documents.

31.    Mr. Roper informed the DOJ that the Respondents do have remaining documents to produce, but that the Respondents allegedly have insufficient funds to make further productions.  The Respondents have provided no information or evidence to the DOJ to substantiate the claim they have insufficient funds to comply with the Subpoenas.  Mr. Roper stated that he did not know when or if the Respondents would make any further productions.

32.    Following the telephonic meet and confers, and despite Respondents' contention they could not afford to make further productions, Jetall made another partial production of documents on August 18, 2023.  Exhibit R.  On August 23, the DOJ asked Mr. Roper and Mr. Porter when the Respondents would complete their production of documents and reproduce the February 7 Production.  The same day, Mr. Roper replied, "checking."  Exhibit S (Email from Richard Roper to Anthony Gill, Javan Porter, and Kenneth Shaitelman, Aug. 23, 2023, 3:59 PM.)  The DOJ has received no further communications from Respondents or their counsel.

D.      Choudhri Has Failed To Produce Any Documents In Response To The Subpoena

33.     The cover letters or emails that have accompanied the six document productions made by counsel for Jetall and Choudhri all state that the productions are on behalf of Jetall.  *See* Exhibits L-P.  The Bates stamps on the produced documents likewise all start with a "Jetall" prefix.  Thus, it does not appear that Choudhri has made any production in response to the Subpoena issued to him.  The March 14 Letter identified this issue and requested a date on which Choudhri would produce his documents.  As noted above, the DOJ has received no response to the March 14 Letter.

E.      Current Deficiencies in Respondents' Document Productions

34.     Foremost, as noted above, Choudhri has entirely failed to respond to the Subpoena issued to him.  The United States seeks an Order from the Court compelling Choudhri to comply with his Subpoena and produce all responsive documents in his possession, custody, or control.  To the extent Choudhri asserts that Jetall's productions constitute productions on his behalf as well (which he has not), his compliance with the Subpoena would still be deficient, as Jetall has failed to comply with the Subpoena issued to it.  The United States seeks an Order from the Court compelling Jetall to comply with the Subpoena and produce all responsive documents in its possession, custody, or control.

35.     Regardless of whether the document productions were made by Jetall alone or by both Respondents, the five usable productions are significantly deficient.  The main categories of missing documents from the five usable productions include the following:

a.      Corporate Records (Subpoena Request No. 1).  Subpoena Request No. 1 requires the production of "All corporate documents related to the Borrowers, including but not limited to registration documents and organizational charts."  The Borrowers all appear to be small or

single-member limited liability companies formed for the exclusive purpose of holding title in a piece of real estate.  This Request encompasses limited liability company agreements, company resolutions, and all documents filed with a Secretary of State.  Jetall has made a limited production of documents regarding the Borrowers, but it is incomplete.  The United States is aware of the existence of documents that are missing from Jetall's production.  For example, among other missing documents, the productions do not include the May 31, 2019 Membership Interest Pledge Agreement between Choudhri and TIG Romspen US Master Mortgage LP ("TIG Romspen") or a July 6, 2018 Unanimous Written Consent of Meandering Bend LLC.

      b.   <u>Agency Agreements or Correspondence (Subpoena Requests Nos. 9-11)</u>.

Subpoena Request Nos. 9, 10, and 11 seek copies of agreements between Jetall or Choudhri and any individual or entity acting as an agent for Jetall or Choudhri, as well as communications with two specific individuals who have acted as agents for Jetall and/or Choudhri, according to other evidence obtained by the United States.  Jetall and Choudhri have not produced any email communications regarding the agency agreements between Choudhri and others.  They have also failed to produce the agency agreements themselves.

      c.   <u>Emails To/From Brad Parker (multiple Subpoena Requests)</u>.  Subpoena Request No. 10 specifically requests communications related to a July 9, 2018 Agency Agreement between Choudhri and Brad Parker ("Parker"), who was the Chief Financial Officer of Jetall, sole member and manager of two of the Borrower entities for certain periods of time, and Choudhri's agent.  Communications with Parker are also responsive to other Subpoena requests, such as Request Nos. 12, 16, and 17, which seek communications relating to the Borrower entities for which Parker was sole member and manager.  Jetall produced only 29 emails between

Parker and Choudhri.  Given the extent of their relationship, it is unreasonable to assume that there would be only 29 emails between Parker and Choudhri.

     d.   <u>Emails To/From Trey Young (Subpoena Requests Nos. 3-6, 9, 15, and 20)</u>.  Trey Young ("Young") was the sole member and manager of the Borrower entity VGRP Holdings LLC when it was formed.  Young worked with Jetall and Choudhri on various real estate transactions.  Jetall's productions contain three email communications with Young.  It is again unreasonable to assume there would be only three emails given the business relationship between Choudhri and Young.

     e.   <u>Emails To/From MidFirst Bank (Subpoena Request No. 14)</u>.  Subpoena Request No. 14 seeks "All documents and communications related to a loan obtained by Galleria Loop Note Holder for the property at 1001 West Loop South, Houston, Texas 77027."  The United States understands that Choudhri engaged in extensive negotiations with MidFirst Bank regarding this transaction.  Yet, despite these dealings, Jetall's productions contain no emails to or from MidFirst.  These communications, which likely exist in some form, are responsive to the Subpoenas.

     f.   <u>Emails To/From TIG Romspen, Wes Roitman, or Joel Mickelson (Subpoena Request Nos. 4-6 and 14)</u>.  The managing member of one of the Borrower entities, Galleria Loop Note Holder ("GLNH"), when it was formed was TIG Romspen, acting through Wes Roitman and Joel Mickelson.  The United States understands that GLNH had extensive interactions with Choudhri, but Jetall's productions contain no emails to or from Mr. Roitman, Mr. Mickelson, or anyone on behalf of TIG Romspen.  These communications, which likely exist in some form, are responsive to the Subpoenas.

g.   Emails To/From Green Bank or Veritex Bank (Subpoena Request Nos. 3-6 and

12).  One of the Borrower entities obtained a loan from Green Bank in March 2018.  Green Bank

was later acquired by Veritex Bank.  The United States is aware from third parties that there

were substantial communications between Choudhri, Parker, and individuals at both Green Bank

and Veritex Bank regarding the 2018 loan.  However, Jetall's productions contain only three

emails from Green Bank and no emails to or from Veritex Bank.

**VI.   Argument and Authorities**

A.   The United States Satisfies The Requirements To Enforce The Subpoenas

36.   Courts in the Fifth Circuit will enforce an administrative subpoena where three

requirements are met: "(1) the subpoena is within the statutory authority of the agency, (2) the

information sought is reasonably relevant to the inquiry, and (3) the demand is not unreasonably

broad or burdensome."  *United States v. Zadeh*, 820 F.3d 746, 755 (5th Cir. 2016) (citation

omitted).  Courts have made clear that "the court plays a strictly limited role" when reviewing an

administrative subpoena.  *Id.* at 757.  The Fifth Circuit has also "consistently recognized the

summary nature of an administrative enforcement proceeding[]" and that "the requirements for

judicial enforcement of an administrative subpoena are minimal."  *Burlington N. R.R. v. Office of

Inspector Gen.*, 983 F.2d 631, 637 (5th Cir. 1993) (citing cases).

37.   Because one does not know where an investigation will lead, this standard is

deferential by design.  *Sandsend Fin. Consultants, Ltd. v. Fed. Home Loan Bank Bd.*, 878 F.2d

875, 878 (5th Cir. 1989) ("[A]n administrative agency's power to issue subpoenas as it performs

its investigatory function is a broad-ranging one which courts are reluctant to trammel.").

Accordingly, "[t]he government need only make a prima facie showing under the reasonable

relevance standard, at which point the party opposing enforcement bears the 'heavy burden' of

demonstrating that the government has not met this standard." *Zadeh*, 820 F.3d at 757 (quoting *Mazurek v. United States*, 271 F.3d 226, 229–30 (5th Cir. 2001)).

           1.    <u>The Subpoenas Are Within The DOJ's Statutory Authority</u>

38.    The DOJ is authorized to investigate Jetall's and Choudhri's activities that may be the basis for one or more claims under FIRREA.  *See* 12 U.S.C. §§ 1833a(c)(1) and (2). FIRREA permits the Attorney General to issue subpoenas that "require the production of any books, papers, correspondence, memoranda, or other records which the Attorney General deems relevant or material to the inquiry."  *Id.* § 1833a(g)(1)(C).  A subpoena may "require . . . the production of any such records from any place in the United States at any place in the United States designated by the Attorney General."  *Id.*  The Attorney General delegated authority to issue subpoenas under FIRREA to the Director of the Fraud Section, Commercial Litigation Branch in the Civil Division of the United States Department of Justice.  Exhibit C.

39.    The Subpoenas issued to Jetall and Choudhri comply with the DOJ's authority pursuant to FIRREA.  The various Subpoena Requests demand the production of documents and communications, consistent with statutory authority.  *See* Exhibits A and B.  Both Subpoenas are signed by the appropriate designee of the Attorney General, Jamie A. Yavelberg, Director Commercial Litigation Branch, Civil Division.  *Id.*  The Subpoenas were served on Jetall and Choudhri in Houston, Texas, which is within the United States.  *See* Exhibits D and E.  Finally, the Subpoenas required the production of documents at the U.S. Attorney's Office for the Southern District of Texas in Houston, Texas, a location within the United States.  *See* Exhibits A and B.  All statutory requirements were satisfied.

2.    <u>The Documents Sought Are Reasonably Relevant To The Inquiry</u>

40.    In the Fifth Circuit "the notion of relevancy is a broad one" when reviewing administrative subpoenas.  *Sandsend*, 878 F.2d at 882 (citation omitted).  "An agency can investigate merely on the suspicion that the law is being violated, or even just because it wants assurance that it is not."  *Id.* (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) (internal quotations omitted)).  As long as records sought by an administrative subpoena "touches a matter under investigation," the subpoena "will survive a challenge that the material is not relevant."  *Id*.

41.    The records sought by both Subpoenas are relevant to the United States' investigation under FIRREA to determine whether false statements were, in fact, made to financial institutions in connection with loans made to several special purpose entities that appear to be connected to Jetall and Choudhri.  The Subpoenas seek documents and communications relating to eight of these Borrower entities and will allow the DOJ to investigate conduct that may be the basis for civil FIRREA claims.

42.    For example, the Subpoena Requests seek the following categories of documents and communications related to the Borrowers and loan transactions:

a.    Request No. 1 seeks all corporate documents of the Borrowers, which will include formation documents, limited liability company agreements that show members and managers of the entities, and corporate resolutions;

b.    Request Nos. 2, 3, 7, 9-11, and 18 all seek information related to ownership interests in or control over the Borrowers, which will demonstrate who in fact had control of the Borrower entities at the time loan applications were made;

c.   Request Nos. 4, 5, 8, and 12-17 seek information on loans applied for or obtained by the Borrowers, which will provide information on the transactions at issue in the investigation;

d.   Request No. 6 requests bank account statements of the Borrowers, which will allow the United States to trace funds loaned to these entities;

e.   Request Nos. 18-20 request communications between Jetall or Choudhri and specific individuals regarding the Borrowers; and

f.   Request Nos. 21-24 seek information on five specific tenants at buildings managed by Jetall who Jetall allegedly used as the basis to obtain "good news money" issued as part of loans obtained by the Borrowers.

43.   Neither Jetall nor Choudhri have ever challenged the relevancy of the records sought by the United States.

### 3.   The Subpoena Requests Are Not Unreasonably Broad Or Burdensome

44.   "[A] subpoena is not unreasonably burdensome unless compliance threatens to unduly disrupt or seriously hinder normal operations of a business." *United States v. Zadeh*, 2015 WL 418090, at *5 (N.D. Tex. Jan. 31, 2015), *aff'd as modified and remanded*, 820 F.3d 746 (5th Cir. 2016) (quoting *FTC v. Jim Walter Corp.*, 651 F.2d 251, 258 (5th Cir. 1981)). There is a high threshold to establish undue burden because "some burden on subpoenaed parties is to be expected and is necessary in furtherance of the agency's legitimate inquiry and the public interest." *F.T.C. v. Texaco, Inc.*, 555 F.2d 862, 882 (D.C. Cir. 1977).  Likewise, because the recipient of a subpoena bears a "heavy burden" to defeat enforcement, *Zadeh*, 820 F.3d at 757, generic claims that a subpoena is "overly broad" do not suffice, *see Texaco*, 555 F.2d at 882 ("Broadness alone is not sufficient justification to refuse enforcement of a subpoena.").

45.     As recounted above, the United States communicated frequently by telephone and email with counsel for Jetall and Choudhri from May 2022 through August 2023, to facilitate the production of documents, and neither Jetall nor Choudhri ever objected to the Subpoenas for any reason.  To the contrary, in September and October 2022, Respondents' counsel repeatedly informed the United States that a full response to the Subpoenas would be made shortly. Counsel further informed the United States that, on behalf of Jetall and Choudhri, counsel had engaged in an extensive process to collect email from custodians, apply search terms to identify potentially responsive documents, and employ contract attorneys to review these documents.

46.     The Subpoena Requests themselves are narrowly tailored to the United States' investigation and focus on eight Borrowers involved in loan transactions for commercial properties and related lease transactions in connection those properties, which were managed by Jetall.  The narrow focus of the United States' investigation undercuts any argument of unreasonable burden.

B.     Respondents Must Produce Documents According To The Subpoena Instructions

47.     The documents produced by Jetall in its February 7 Production appear to contain emails and Microsoft Word documents that were converted from their native form to non-searchable PDF files.  The cover email accompanying the February 7 Production failed to provide any context as to how these documents were collected or from which custodians, and the production did not contain any metadata whatsoever.  *See* Exhibit P.  By producing the documents in an unusable format, Jetall failed to comply with the Subpoena's instructions.

48.     Instruction No. 11 to the Subpoenas requires imaged hard copy and electronic documents to be produced according to the Production Specifications attached to the Subpoenas. For most electronically stored information ("ESI"), including emails, the Production

Specifications require documents to be produced in TIFF accompanied by a load file that

contains the metadata related to that document.  *See* Exhibit A at 4; Exhibit B at 4.  This format,

often called "TIFF, Text and Load Files" or "TIFF+," has been "the most common way to

produce ESI for more than a decade" and has been widely endorsed by the courts.  *See Jordan v.*

*Mirra*, No. 1:14-CV-01485-GAM, 2019 WL 2127788, at *11 (D. Del. Feb. 27, 2019), *report and*

*recommendation adopted,* No. CV 14-1485, 2019 WL 2121346 (D. Del. May 15, 2019) (quoting

*The Sedona Principles, Third Edition: Best Practices, Recommendations & Principles or*

*Addressing Electronic Document Production*, 19 SEDONA CONF. J. 1 (2018)); *see also*

*BalanceCXI, Inc. v. Int'l Consulting & Rsch. Grp., LLC*, No. 1-19-CV-767-RP, 2020 WL

1234640, at *3 (W.D. Tex. Mar. 13, 2020) (holding "reasonable" the request to produce "ESI in

.TIFF format with a corresponding load file, containing metadata fields"); *Heartland Food*

*Prod., LLC v. Fleener*, No. 18-CV-2250-JAR-TJJ, 2019 WL 2501862, at *2 (D. Kan. June 17,

2019) (same).

      49.     The format specified in the Production Specifications is important because it

allows produced documents to retain similar functionality as when kept by the producing party in

the ordinary course of business.  This functionality is essential for the DOJ to understand the

documents that have been produced and to review them efficiently.  By contrast, the format of

the February 7 Production makes the documents unusable because the reviewer cannot tell where

individual documents begin or end and none of the related metadata is included.  If Jetall

believed that producing documents in the format specified in the Production Specifications was

unduly burdensome or objectionable, it could have raised that concern with the DOJ or filed a

petition to modify or set aside the subpoena pursuant to 18 U.S.C. § 1968(h).  Instead, Jetall

never served written objections to the Subpoena or otherwise objected to the Production Specifications, and it never filed a petition to modify the Subpoena instructions.

50.     In assessing whether Jetall and Choudhri should be required to follow the Production Specifications that are part of the Subpoenas, the Court may apply the standards governing production of ESI under the Federal Rules of Civil Procedure, which apply to proceedings to compel enforcement of an administrative subpoena "except as otherwise provided by statute, by local rule, or by court order in the proceedings."  Fed. R. Civ. P. 81(a)(5).  Courts have "discretion" in such proceedings to apply the Federal Rules in a "flexible manner," *Zadeh*, 2015 WL 418090, at *2, and "whenever the district court deems them helpful," *United States v. Tennessee Walking Horse Breeders' & Exhibitors' Ass'n*, 727 F. App'x 119, 124–25 (6th Cir. 2018).

51.     Courts have applied Federal Rules of Civil Procedure 34 and 45 in administrative subpoena enforcement proceedings to help define the parties' obligations.  *See, e.g.*, *United States v. Int'l Union of Petroleum & Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989) (analyzing administrative subpoena under Rules 81 and 34 to determine if documents were within the "possession, custody or control" of subpoena recipient); *New Orleans Pub. Serv., Inc. v. Brown*, 507 F.2d 160, 165 (5th Cir. 1975) (referencing Fed. R. Civ. P. 45 framework to analyze challenge to administrative subpoena).

52.     Both Rules 34 and 45, which are not inconsistent with 12 U.S.C. 1833a(g), permit a party requesting the production of documents to specify the format of production.  Fed. R. Civ. P. 34(b)(2)(E)(ii) and 45(e)(1)(B).  The United States provided detailed instructions on the form of production in the Production Specifications.  Jetall never objected to those specifications, and

in fact, made earlier productions in accordance with the specifications.  Thus, absent any other

agreement between the parties, the Production Specifications should be followed.

53.     Even where a requesting party does not specify the format of production, the

responding party "must produce [ESI] in a form or forms in which it is ordinarily maintained or

in a reasonably usable form or forms."  Fed. R. Civ. P. 34(b)(2)(E)(ii), 45(e)(1)(B).  The

Advisory Committee Notes to the Federal Rules of Civil Procedure clarify that a reasonably

useable form "does not mean that a responding party is free to convert electronically stored

information from the form in which it is ordinarily maintained to a different form that makes it

more difficult or burdensome for the requesting party to use the information efficiently."  Fed. R.

Civ. P. 34 Advisory Committee Notes.  For example, if the responding party "ordinarily

maintains the information it is producing in a way that makes it searchable by electronic means,

the information should not be produced in a form that removes or significantly degrades this

feature."  *Id*.

54.     Producing documents as TIFF images with a load file satisfies the "reasonably

useable" standard.  *See, e.g.*, *Jordan*, 2019 WL 2127788, at *12 ("in the majority of instances,

TIFF + is a 'reasonably usable' form of production for most purposes and types of ESI under

Rule 34(b)(2)(E)(ii)") (citation omitted).  By contrast, production of two massive PDF files with

no document breaks or other metadata is "indefensible."  *LA Terminals, Inc. v. United Nat'l Ins*.

Co., No. SACV190286ODWPVCX, 2021 WL 6103181, at *11 (C.D. Cal. Nov. 17, 2021) ("The

Court agrees with Plaintiffs that Defendant's production of 'a single PDF with no slip sheets,

load files, or other means of discerning one document from the next' is indefensible."); *Indep.*

*Mktg. Grp., Inc. v. Keen*, No. 3:11-CV-447-J-25MCR, 2012 WL 207032, at *2 (M.D. Fla. Jan.

24, 2012) (holding that party did not meet "reasonably usable" requirement where it "produced large PDF files lacking metadata and searchable text").

55.    Jetall's February 7 Production consisting of two non-searchable PDF files without page breaks, load files, or metadata is precisely the type of "degradation" in search function that the Federal Rules prohibit.  Jetall has transformed these documents from the format in which they were kept in the ordinary course of business into a different format that is not reasonably usable and in violation of the Production Specifications and Federal Rules of Civil Procedure 34 and 45.  In similar circumstances, courts have ordered the producing party to re-produce the unusable documents in a proper format.  *See Indep. Mktg. Grp.,* 2012 WL 207032, at *3 ("Plaintiff is directed to search its system for all responsive files using the relevant search terms and produce the results to Defendants in a usable format as the documents are kept and used in the normal course of business.").

56.    The Court should order Jetall to re-produce the February 7 Production in compliance with Subpoena Instruction No. 11 and direct Jetall and Choudhri that all future productions must likewise comply with the Production Specifications attached to the Subpoenas.

## VII.    Conclusion

57.    For all of the reasons discussed above, the United States respectfully requests that the Court (a) order Jetall and Choudhri to produce all non-privileged documents responsive to the Subpoenas within their possession, custody, or control within two weeks; (b) order Jetall to reproduce its February 7 Production in a format consistent with the Production Specifications within two weeks; and (c) order that any future production of documents by Jetall or Choudhri must also comply with the Production Specifications.

Date:   September 27, 2023

Respectfully submitted,

Brian Boynton
Principal Deputy Assistant Attorney General

Alamdar S. Hamdani
United States Attorney

 /s/Kenneth Shaitelman
Kenneth Shaitelman
Assistant United States Attorney
Southern District Bar Number: 14199778
Texas Bar Number: 24077606
1000 Louisiana, Suite 2300
Houston, TX 77002
Telephone: (713) 567-9609
Facsimile: (713) 718-3303
E-mail: kenneth.shaitelman@usdoj.gov

*Attorney-in-charge for the United States of America*

Jamie A. Yavelberg
Allison Cendali
Anthony D. Gill
Attorneys, Civil Fraud Section
U.S. Department of Justice
175 N. Street, NE
Washington, DC 20002